U.S. v. The Walkers Barry and Barron Jim West Barron Walker There are numerous issues raised in Barron Walker's brief, but I'd like to just hit them in the order of some priority here. I believe there's a clear misjoinder, there's a clear violation of Rule 8, and the question is whether or not Rule 8 is a per se rule, that if violated requires a retrial, or whether it's harmless error, and it's clearly not harmless error in this case, the evidence on major count of the indictment, the count that cost Barron Walker 25 years mandatory minimum consecutive, was very, very slim. That's the second. That's the second of the two. That's correct. That's correct. This Court has ruled that if there are two 924Cs in one case, that they're concurrent and the mandatory minimums kick in. That's the second. Yeah. Yes, Your Honor. And the evidence was very slim on that particular count. This was the only count that there were any real drugs involved. Everything else was speculation as to whether or not there were any drugs at all. But on that count, they had seized drugs. It also involved an escape, the wicked flee where no one pursueth, and the older brother of Barron Walker had escaped, had begun dealing drugs in the indictment. He's not challenging the escape per se. The only reason the escape, I think, comes up is because you claim that it shouldn't have been, that because of the failure to sever, the fact that he escaped comes before the jury. Absolutely, Your Honor. The prosecution here was a two peas in a pod type of prosecution. You had the older brother, Barry. You had the younger brother, Barron. And Barron was dragged through this based a lot on what Barry had done. And these charges that were outside the original indictment, outside the term of the conspiracy consisting of drug violations and escape charges had a pour-over effect in this particular case. To help me with this case, looking at the overall case, there's no challenge, is there, to the fact that there was enough evidence for one count. Are you referring to the robbery count, Your Honor? Yeah, the young kid who happened to be in the wrong place at the wrong time. The 16-year-old neophyte. Yeah, the challenge to the robbery count, of course, is the interstate commerce aspect of the Hobbs Act because the Hobbs Act's the jurisdictional predicate to it. Yeah, that's your claim on that. But the fact that it happened isn't being challenged. No, there's no challenge to that from me. Yeah, your challenge is to the sufficiency of the evidence of the second count, which added the large amount of prisoners. Right. My big fear here is that there's some sub saliento concurrent evidence or consecutive evidence rule that would apply. There's no sub salientia before this court. I mean, it's got to be in the record, and it isn't. I'm sorry, Your Honor. I said we don't do sub salientia. I mean, there's no evidence. There's enough evidence to support at least one count, right? Yes, there is. Yeah, you don't challenge that. And your challenge is to the sufficiency of the second count, which added all the years, 25 or 20 years. Absolutely, absolutely. Your Honor, here's the question that I have. As I sort of parse through the evidence, admittedly it appears to be slim, but here's what I understand it to be, and tell me if my understanding is wrong. Basically, two witnesses on the possession and furtherance. It's an arguable point, fair enough. But Rhodes and McNeil. And Rhodes essentially says Barry had a gun in his lap, and Barron had crack on his lap. Correct. If I may elaborate, Barry stepped out of the car. We don't know where Barron was in the car, front seat, back seat, or whatever. Fair enough. And someone saw a gun. When his coat fell open, he had a gun on his hip. Right. With regard to McNeil, at one point he's sure on direct, he's unsure on cross. He's 100% sure on redirect that it's one of them. Yes, Your Honor. Right? He's not sure whether it's Barry, he's not sure whether it's Barron, but he's 100% sure one of them had a gun. I believe that's correct. Okay. Well, I've got transfer sites, just in case you don't agree. But as I understand it, that's the totality of the evidence. That is. I think Mr. Consiglio will argue that there was a Clarissa King that provided evidence, but her testimony, total hearsay. And not co-conspirator hearsay? Not a co-conspirator. Right. Okay. I'm sorry? No, I was asking if he's all right. Oh, okay. Sorry. With that in mind, on the 924C, as I understand it, the government's saying, well, we do charge aiding and abetting. It was instructed. So whether it's Barry or Barron, that's the way to bring it home, as it were. No, there was no Pinkerton charge. There was no aiding and abetting charge. It's in their brief, I'm asking. Oh. Yeah. I don't believe that there was, and what I would have presumed would be a Pinkerton charge, that they were guilty of conspiracy, so one's liable for the acts of the other co-conspirator. And I cite in a footnote the Goins case where this circuit did approve that. That wasn't done in this case. You won't find it anywhere in the court's instructions. You won't find it in the argument. And what you have here at the best, you have Mr. Rhodes who testified in the grand jury that my client, Barron, had the gun and testified at trial that the other client, Barry, had the gun, inconsistent statements under oath. And then you have Jason McNeil. He wasn't impeached with the grand jury statement anyway. I didn't impeach him because I didn't want to put in the evidence. I'm with you, just asking. It was a hard decision, but I decided intentionally I'm not going to impeach him with that. But when Jason McNeil, if you read his testimony, he says, you know, I think it was Barry. I'm sure it was Barry. I think it was Barron. And I said to him, can you be sure which one had the gun when you were driving around with him? He said, no, I'm not sure. Now, you can't take, you know, preponderant evidence. It doesn't even meet a preponderant evidence standard. Both of those witnesses said different things at different times. One said it's Barry. One said it's Barron. How could the jury ever make a decision? It's a 50-50 toss-up. So when I say the evidence was thin, it was thin. The question is, it might not even have been sufficient. It might be the rare case where they're saying two different things, either one of which could be true, and the jury just can't decide that. They flip a coin. It's certainly not through demeanor that they could have determined it. Undisputed fact that both witnesses were unsure who had the gun. Mr. West, can I ask you, take you off the sufficiency of the evidence issue? Certainly, Your Honor. And a slightly different question. If we agree with you, we haven't even talked. As you know, we don't talk until afterwards. But if we agree with you that the evidence regarding the first firearm offense is insufficient, does the Brady claim become moot, given that there was overwhelming evidence to support the conviction on the remaining count? No. I don't think anything is mooted in a case where you have a second firearms conviction in a 25-year. No, no. But what I'm saying is, what's your Brady claim? Okay. The Brady claim was Skyler Rhodes, whose testimony was critical, and I believe was critical, had cocaine, crack cocaine, during the course of his cooperation with the government while cooperating as an informant. He testified that he was a reformed individual from the year 2006. And that he had the bombs in his pocket. Yes. We know the record. All I'm saying is that once, if we were to agree with you, Yes. that the first firearm offense has insufficient evidence to support it, then doesn't the Brady claim go out of the window? Because you don't need that. No, because he is the most, he is the critical witness on the second firearm. He had to be believed. But you're not challenging the second firearm. I mean, there's plenty of evidence to support the second. That's what I asked at the beginning. Oh, okay. To support the second firearm. That a firearm was used during a robbery, there's overwhelming evidence. So then the Brady claim goes out. Yeah. Okay, that's all I wanted to make clear. You do have an argument about interstate commerce, and I think we better hear that. The interstate commerce is a very important argument because this is, Can I speak just briefly on that? Oh, sure. I invited you to. This is the unusual case. There have been cases where people have robbed drug dealers, and it's been a Hobbs Act violation, but it's involved businesses, established businesses. This particular gentleman, Edward Wright, that was robbed, was a teenager. His first drug deal, he bought a quantity of crack, what he believed was crack cocaine. There's no proof it was crack cocaine from somebody he knew as Ice, unknown individual other than a nickname. But he believed he bought crack cocaine. He believed he bought crack cocaine. He would have sold it as crack. Yeah. And he took it to sell it and was immediately robbed. The cocaine disappeared. It was never sold, and he was robbed. And, of course, he himself had a gun. He shot and killed the best friend of my client, Baron Walker, as part of that robbery in self-defense. Now, the question is, what's the impact on commerce? And there's one thing here. It's certainly de minimis. Well, de minimis could count, but I don't think it even exists. And I say that it doesn't exist because this circuit has always talked about the diminution of assets theory, that as a business that it's robbed, it's extorted, its assets are diminished. If it does business in interstate commerce, no facts like that exist. And I cite two cases where other circuits have looked at it factually and said it's not de minimis. It doesn't qualify for Hobbs Act jurisdiction. That's a jurisdictional element. And I respectfully submit that the facts in this case, when you take them apart, do not qualify. As a matter of fact, what the ---- Is your argument that this is a small cocaine business, and therefore it doesn't ---- let me just give you a hypothetical for a second. Let's say, you know, remember all the old trucking cases in the 60s and 70s, hijacking, right? Certainly. So let's assume for a moment that the hijack is not of, you know, sweaters or whatever, it's of drugs. You know, remember the Miami cases coming up here in the 80s and so forth. So let's assume it's one of those, right? Would you make the same argument with regard to not fulfilling ---- Well, I mean, that's silly. I understand the truck would be coming in interstate commerce, but, I mean, would you make the same argument with regard to the business and the depletion of assets that it's, you know, a drug business that's different? Not with a truck that's driving down an interstate highway going from state to state. He was the U.S. Attorney. Let's make it slightly different. Let's not make it a truck, for instance. Sure. Let's say the young person that was jumped was a big dealer and had a truck full of stuff, and that's what the object of it is. I wouldn't be making the same argument at all. You have the aspect of a business there. The evidence here is undisputed. First deal, only deal, didn't intend to go back and deal anymore. This was a dalliance. This was aberrant conduct according to the government's evidence. Well, he was starting out in his life as a neophyte. Judge Pollack had a question, and I want to be sure he gets it in. I'm sorry. Yes, Your Honor. No, I simply wanted to explore that aspect. I'm not clear that what your argument is that because Mr. Wright was new at the game, somehow that exempts the whole transaction from the Hobbs Act. It's tied into the diminution of assets theory. This case wasn't tried on a diminution of assets theory, the logic being that that's the theory this circuit has approved. This case was tried, as you would on, you know, a gun case where a convicted felon possessing a gun, showing that the gun went into interstate commerce. Here what was shown in the whole upshot of the prosecution, and even an expert witness was called to say, cocaine all comes from Columbia or all comes from Chile, and it travels in interstate commerce. My point is it arrives in Pennsylvania. The cocaine is manufactured into crack, which is what happens after it arrives. It's not usually turned into crack. And then the cocaine is sold in the streets. I asked the expert, can you tell us, the expert that testified, all cocaine comes from South America. And that's another issue, too, because there is pharmaceutical cocaine, and I filed a 40-page brief on that. But in any event, I said to him, how is interstate commerce affected by cocaine that comes from South America and hits the streets of Harrisburg, and a teenager buys it and is then, somebody attempts to rob him. This is an attempted robbery. This isn't a complete robbery. Attempts to rob him. How is interstate commerce affected? The expert on interstate commerce said, I don't know. And I don't know either, Your Honor, and I don't think there is an effect on commerce that brings this within the jurisdiction of the federal court. Why don't we listen? Oh, I'm sorry. Go ahead. No, no, go ahead. No, I just was going to go to the other counsel. Go ahead. The demonstrable impact on interstate commerce is, how shall we say, modest in this case. But is that not characteristic of the whole flow of the case law on this issue? I don't think so, because you have ‑‑ I was a great privilege to serve as an assistant United States attorney in the 70s, and I argued Hobbs Act cases. And when I came here to argue them at the old courthouse up the street, I was well armed, because the legislative history said, Congress intended to use all the authority under the Commerce Clause in passing the Hobbs Act. And you could stand here and you could say, all the authority under the Commerce Clause, no one has defined that. And then the Lopez case came along. And then the Morrison case came along. And the trend, yes, I think there was a tsunami that the Hobbs Act is a general federal law enforcement statute that brings everything within federal court's jurisdiction. And that tsunami dried up. And it dried up with Lopez and Morrison, and everybody's looking at it and saying, what is the factual predicate that gives us a jurisdiction under the Hobbs Act? And this case is beyond de minimis. This is the case that requires someone to say, well, all narcotics have to come under the Hobbs Act as a matter of law. I don't think anybody's gone that far. But that's what this case requires. No diminution of assets. This court would have to turn its back on Urban and on Mazzei, which was an in-bank decision, on diminution of assets and say, it doesn't have to be diminution of assets. Mere travel and interstate commerce of a factor of production that is supports a Hobbs Act prosecution. And I don't think that's reasonable. That's general police power. Thank you, Mr. Rice. Thank you, Your Honor. I think you did ask for rebuttal time. Am I right, Marina? Okay. Thanks. Oh, I forgot. There's another one. How much time do you have? Ma'am, we had originally broken it out to be ten minutes each to argue. Obviously, that exchange went well beyond that time. So I'll try and keep my points brief to some issues that were addressed. Sure. We hope you do. Yeah. First of all, with all due respect to my colleague, Mr. West, I would actually disagree with him on your question, ma'am, regarding the Brady Act or the Brady claim going out the window. And the reason why I disagree is specifically dealing with the evidence that – Did you say who you are? Oh, I'm sorry, ma'am. I'm Jason Duncan. I represent Barry Walker in this case. Okay. And specifically, I point to the issue under the Brady claim is also – one thing not to be overlooked is the evidence at trial that even suggested that Barry Walker was involved in this robbery. So an identity question, again, revolved primarily around Mr. Rhodes' testimony regarding this tape recorder that he had to – where he allegedly tape recorded my client's confession to this crime. However, the tape recorder didn't perform properly, even though Mr. Rhodes had used it on several cases prior to that, and it had performed just fine. So now you have the tape recorder that could have substantiated my client's claim that he had told Mr. Rhodes that he wasn't involved in this robbery and that Mr. Rhodes himself was involved in the robbery, mysteriously doesn't work and is gone. And the only testimony you have to support that now is Mr. Rhodes' testimony. And again, his credibility was a key issue. Well, didn't you savage his credibility as best as you could? This doesn't seem like a case where there was a lack of fodder for cross-examination, and that's number one. Number two, I want to make sure that I understand. We are talking about what was found in his coat. Correct. That's the totality of your claim, that by not being able to cross him on a couple of flakes of marijuana and a – what is it, 0.18 grams of crack? Yes, Your Honor, that's correct. Any question that that's below what is normally considered to be an amount that would be distributed in the drug commerce? I have certainly had clients charged with two grams or less of crack cocaine distribution, yes, sir, and I've defended them in federal court. As to the other evidence against – to attack Mr. Rhodes' credibility, I was not trial counsel in this case. However, there was substantial cross-examination of Mr. Rhodes, but it was on different issues, such as his motive to fabricate based on his deal that he got and that at one time he was a bad character that did these things. But the way he presented himself at trial was that he should be believed because he had gone straight and had been working for the government for some time. And, in fact, he directly testified at trial that since he started working for the government, he was not involved in either use himself or in dealing of any drugs or any of those substances during that time frame. This evidence goes directly to show that that testimony, if this evidence were allowed to have come out, the jury could have concluded that Mr. Rhodes had perjured himself when he testified in that way,  especially in key regard on the Brady part of this, in key regard to this alleged tape recording of my client's alleged confession, that he was the only one that testified to that. So, you know, that's part of the problem here. So you're saying that these two flakes of marijuana and the .18 meets the test of the result? There's a reasonable probability that the result of the trial would have been different had you had trial counsel had an opportunity to cross on this? I believe it could have been, yes, sir. And the primary reason why I believe that is true is you have an individual. There were several theories presented about Mr. Rhodes by the defense at trial. And, again, I was not that trial counsel. But one of those theories was that Mr. Rhodes had told other witnesses, and this came out in the record, told other witnesses that he was conducting these robberies with the deceased McNeill brother. He had committed these robberies previously with him. So one of the theories presented by the defense at trial is that Mr. Rhodes has another reason to fabricate, and that is he was involved in this robbery himself and instead pinned it on the Walker brothers because he saw that as his way out. And the fact that he went to a drug deal, and while it's noted that the government refers to it as a couple of flakes of marijuana, the fact is is that the report actually produced by the police that were involved in this transaction. Is that in the record? Yes, it is attached as an exhibit in our briefs, Your Honor. And the police involved actually describe it as much more of a big deal than the prosecution seemed to describe it, that it was much more significant than, and it wasn't simply an insignificant amount of drugs that were on him. And certainly at this point it suggests several things. He could have been, and this is one of the defenses presented at trial by Mr. West and the other defense counsel, is that he could have been setting up this other drug dealer. So he has on him these drugs. He goes off to the drug deal, doesn't get any drugs because this person is not a drug dealer, and then comes back. What are we talking about? Are we still talking about .18 grams of crack? How much marijuana? Not a substantial amount. We're not talking pounds or anything like that, but at least enough to say that it was enough that he would have been charged criminally with it or could have been charged criminally with it. It was beyond that kind of de minimis amount of drugs in this case. Well, what's the de minimis amount below which he would not have been charged? Well, in Pennsylvania, sir, in federal court, like I said, I've seen quite a bit charged, but in Pennsylvania generally they regard that anything of personal use size, if that was the only amount of drugs that you had possessed was marijuana and no crack or anything, that a small amount of marijuana for personal use is considered a misdemeanor offense for which, sure, he would have been prosecuted, but it's punishable by less than 12 months in prison. And so generally it's dealt with in that kind of situation. What's the legal point that you're making? I'm not sure. My legal point, ma'am, was to deal simply with the Brady issue. And even if you were to rule in our favor on the other issue and get rid of the other 924C, I believe that the Brady violation also holds and still is applicable because Mr. Rhodes' testimony and his credibility was critical on the other charges charged, including the Hobbs Act robbery. It was critical to identify my client as being one of the participants in that robbery, even though my client had denied throughout trial that he was a participant and even presented his girlfriend, who did testify and give him some, she couldn't say for sure, but an alibi defense in that it would have been, if her times were correct, it would have been impossible for Mr. Walker to have participated in this robbery at the same time and made it home in time. You're talking about Barry Walker, right? Yes, ma'am. He confessed. No, Barry Walker didn't confess, ma'am. There was no confession. The only confession given in this case, not to police officers, the only confession alleged in this case was to Mr. Rhodes himself, who allegedly had tape recorded it, but then mysteriously this tape recording had gone awry, even though that very tape recorder had been used by Mr. Rhodes in the past. Is that it? On that point, yes, ma'am. Well, I think that's your time. You gave him 10, and that's your time. You're red like swan. We gave Mr. West plenty of extra time, so that'll adhere to you, too. Okay. Thank you, ma'am. Thank you. I want to hear the government in response to this. Where's the government? Mr. Consiglio. Good afternoon. I'm Michael Consiglio on behalf of the United States. The court is focused upon several issues that have been raised on appeal, and I'm going to direct my arguments to those issues. If there's other arguments that will be addressed, I will rest on my brief. If there are other questions, we'll ask them. Very good. Yes, you know. With respect to the interstate nexus in this particular case, I believe the defense has focused its attention inappropriately upon the age and relative lack of experience, as testified by Mr. Wright, to his crack cocaine activities. Looking at the record on its total, this fits in, in an illicit sense, like many other Hobbs Act robbery cases that this court has approved. This is just like a convenience store that gathers products from across state lines. But we don't have that evidence before us, do we? I mean, do we have to take all of our experience with Hobbs Act cases, considerable on all three, and say, well, we know that these drugs go in interstate commerce and therefore you've proven that? I mean, what is before us to show the effect on interstate commerce? The law gives us, first, the authority that it has to be a potential effect in interstate commerce. It doesn't actually have to be an actual effect in interstate commerce. Second, and important to note, is that it was charged and argued as a criminal attempt, as an attempt to complete this robbery. And because, in actuality, the robbery wasn't completed. They attempted to take product from Mr. Wright, his proceeds, and they didn't succeed and actually failed tragically. He defended his business. He did. He did. With a gun. Yes. So there are two avenues for which to view the potential impact on interstate commerce. And it is potential. It is like the convenience stores that get products across state lines that sound sufficient because they have to close for a few hours while the investigation happens. Well, this was a homicide scene. This was an open-air market where crack cocaine is trafficked. That was closed down by police and investigation, which essentially shut that market down for a period of time. It is the potential impact upon a commodity, which is, with all the evidence and record we have, an interstate international commodity. I must confess, I didn't look at the indictment to see, but you're telling us that the indictment charges a potential effect. Well, the indictment charged a criminal attempt to rob Mr. Wright. And there was a specific instruction to the jury on criminal attempt to that effect. Okay. Thanks, Mr. Hudson. Thank you. With respect to the sufficiency of the evidence for the 924C conviction dealing with not with the Hobbs Act robbery, if the court finds sufficient evidence of a potential impact on interstate commerce, as well as the attempt in this particular case, then the 924C would logically connect with that because there was overwhelming evidence of firearms used in that particular episode. In one? One of the two? Yes. In counts, I believe it's counts... Well, whatever. There were two... The May 31st shooting incident, yeah. But with respect to the drug trafficking and conspiracy and possession of a firearm and furtherance of those episodes of those crimes, which were charged in counts one, two, and three, there was some discussion about possession of the firearm, who possessed the firearm and when. The jury was specifically instructed about joint possession of these matters. And the way this endeavor played out and was explained to the jury is that Barron and Barry Walker worked together, that they worked together in these activities. But was the jury given an aiding and abetting instruction? I don't believe they were. With regard to the first firearm possession? Yes. I don't believe the actual instruction was given on aiding and abetting. If not, can we impute the testimony that one brother had the gun against the other brother? Since there was an instruction on joint possession, which when you look at joint possession in relationship to what aiding and abetting is, and I can direct you to the pages of the transcripts for the joint possession. That is, I guess it's page 623. Joint possession of the firearm? Joint possession of the firearm and joint possession of the drugs. When you look at what joint possession is as defined under the law, it's almost identical to aiding and abetting. It is having access and ability to control at the same time. But you asked us to sustain it on the basis of aiding and abetting, and there was no aiding and abetting instruction. That's true. And you're asking us to go farther than we have a basis to go. Although I believe it was charged as aiding and abetting. But they weren't given an instruction. But no instruction. But an instruction on joint possession was given. But that's not what you're sustaining, trying to sustain it on. As far as what the jury had sufficient evidence to find in this particular case, what they were instructed on was the idea of joint possession, which in many respects is the same as aiding and abetting. But we really require an instruction in order to sustain the conviction. And if the instruction was for joint possession, then it was given. And the jury appropriately considered it. What were they told about joint possession? They were told, well, to read from the instruction, they were told that possession may be momentary or fleeting. Proof of ownership of the controlled substance is not required. The law recognizes that possession can be sole or joint. If Baron Walker or Barry Walker alone possessed a controlled substance, that's sole possession. If the defendants jointly with others possessed a controlled substance, that would be joint possession. And there is another phrase on page 628, again referencing to joint possession, dealing with a firearm. Again, it's instructed that possession may be momentary or fleeting. Proof of ownership of a firearm is not required. As I previously explained, the law also recognizes that possession may be sole or joint. If one person alone possesses a firearm, that is sole possession. However, if more than one person may have the power and the intention to exercise control over a firearm, this is called joint possession. Help me. Aren't you arguing aiding and abetting? That's why aiding and abetting and joint possession are so close. It's really the same. And in the context of the facts that we have in this particular case, I respectfully submit that they are, because the facts that we have is described by Jason McNeil and Skyler Rhodes. And you want to put the two of them together, but those two testimonies, right? And they're not very clear who had what. It seems pretty slim to me, Mr. Consiglio. In light of the total context. I usually find the government's evidence slim, but it's pretty slim in this case. In this case, if you take a look at it in its total picture, I respectfully submit to you that it's not slim. With Jason McNeil's testimony. You look like a question about to come out. It's coming, baby. With respect to direct evidence, yes. But totality of the evidence, what was the purpose of the robbery then? It was to rob a drug trafficker. And to think that this was the first time in their lives that they decided to get involved with crack cocaine. You don't want to make that argument. No, that's not a fair argument. Well, if it's – no, but if you take that backdrop and the overwhelming evidence that they engaged in that particular episode on May 31st, and then say we have other witnesses saying that they did it in the weeks before, all of that evidence from May 31st establishing the drug trafficking and the use of firearms corroborates the stories about what happened in the weeks before, as well as the escape by Barry Walker and his drug trafficking thereafter. Well, you've got to help us for a second. Let's do it a little more slowly. The reason that Judge Sloviter, I think, she hasn't talked to me about this, but listening to her, is asking about aiding and abetting. And the reason I asked your adversary about aiding and abetting is that's what you argued in your brief. I did identify it as aiding and abetting. I should have identified it as joint possession. So, silly me, I'm thinking there's an aiding and abetting charge. It makes perfect sense to me in that context. So there's no aiding and abetting charge. We've established that. Your argument is really joint possession, and that's what was charged to the jury, and that's what you want to argue now, but it's not in your brief. That's correct, Your Honor. Okay. We have a lot of authority that says he can't do that, but go ahead. Right. Despite the authority, you're here, we'll talk. So, you know, you threw a lot of evidence at us a few moments ago, May 31st, everything that happened in the conspiracy. I mean, what we're talking about, because of the misapprehension that we were under, based on your nomenclature, was that the little chart that I had talked about with your adversary was the totality of the evidence with regard to this particular charge, and that is that Rhodes seemed clear but arguably equivocal at different moments about who it was, but it ultimately appears that he said Barry had the gun and that McNeil was unsure. He was sure somebody had it, but wasn't sure who it was. Now, in that context, given the theory that you're positing now of joint possession, what are we to conclude with regard to whether there is sufficiency of the evidence on this count? With respect to the information and evidence that we've presented to the court, we respectfully submit that there is sufficient evidence that they both possessed firearms and that they both engaged in drug trafficking, and that under the totality of the evidence that it's sufficient. So we should take into account also Rhodes' statement ascribed to Barry that they had guns on the May 31st incident. Is that part of this totality you're talking about now? No, the totality of the evidence would be the combination of the bullet found in, I believe it was Barry Walker's car when he was arrested, that matched the casings found at the scene. The testimony from Barry Walker's girlfriend that says that Barry Walker came in the night of the shooting and he was excited, he was amped up, he was worked up about an event that had happened that night. The testimony from Jason McNeil and James Leakes identifying their participation in the robbery itself, their activities thereof, and what happened afterwards. The statements they made identifying the participants in the robbery, that all being the evidence establishing Barry and Barron Walker's involvement in the May 31st incident and firearms thereof. You said firearms. As far as I can tell, we're talking about one firearm, right? The only evidence is one firearm. With respect to the robbery on May 31st, I believe there was at least four firearms. Because there was five participants in the robbery. John McNeil had a firearm that was supplied by Barron Walker. May 31st, the first or the second? May 31st is the robbery shooting. Yeah, not the kid. No, May 31st is the kid. May 31st is when the shooting happened and when someone died. Mr. Wright. Yeah. And in that particular episode, there was four firearms to the defendants and their co-conspirators and a firearm with Mr. Wright. With respect to the drug trafficking that happened in the weeks before, Skylar Rhodes describes one firearm. The firearm that was in the belt or in somewhere. Yes. And Barron Walker, I'm sorry, Jason McNeil describes a firearm on one of the defendants while they were engaged in drug trafficking during the weeks before. Because that's the 924C. Yes. Yeah. Okay. It's one firearm. It's one firearm. All right. With respect to that. I just said firearms and I wanted to know where the S was coming from. Right. Well, there may, depending on how you. Well, anything may. I mean, you know, don't go into my car, but there isn't any in my car. But there are two episodes. There are two episodes, the Jason McNeil description and Skylar Rhodes, which are independent. There's enough evidence on one. That's really as I see this case. Go ahead. Well, I'm sorry for going over well-trodden territory. May 31st and the McNeil testimony about seeing them in the car, that's the totality of the evidence on the 924C count? Yes. Okay. Yes. If you'll go back for a moment to the Hobbs Act aspect, I take it your case comes down to saying, well, Mr. Wright was peddling cocaine. And we have an expert witness who says cocaine comes from outside Pennsylvania. And that's the Hobbs Act demonstration. Is that right? I mean, there's nothing else to show an impact. I appreciate that the testimony of the chief is itself subject to challenge. But assuming that's part of the case, assuming it was permissible for him to testify, I wonder if it isn't rather small potatoes to say that an attempt to rob this, what did you call him, an apprentice? A neophyte. A neophyte, yes, a neophyte. I don't believe in Trump. That invokes the Hobbs Act. And in this particular case, I respectfully submit that it's more than sufficient, based upon the context of the way it happened. If the purpose of the Hobbs Act is to criminalize the interference with interstate commerce and that it happens even in a diminutiveness or potential way, the age and seniority of a drug trafficker really should be irrelevant, just as if it's a Would it have been important to the government's case that Mr. Wright had cocaine rather than something that the defendants anticipated that he would and decided to go rob him? In light of it being charged as a criminal attempt, I respectfully submit that it would not. That it would be, and in answer to the question before, it would be similar to robbing of a convenience store on its first day of business. It still is a business engaged in interstate commerce. And even if it was an unsuccessful robbery, an attempted robbery of that business would qualify. The illicit nature of this business, the youth of the drug trafficker and his representations of being limited experience in this field, should not have an impact upon that particular element of the offense and this low jurisdictional threshold for that particular offense. So you disagree with your adversary that size matters. And if this were a truckload of sugar, but it had been represented in the negotiations as cocaine, you could still be successful with a charge of attempt. Absolutely, absolutely. And that was identified even in the case I cited, Gennotti, where a criminal conspiracy to affect interstate commerce, even where there was no potential impact or even a possible impact on interstate commerce was sufficient. And the same circumstances would apply here. Mr. Consiglio, how do you respond to Mr. Duncan's argument with respect to the Brady issue? Well, with respect to the Brady aspects of this, the first two stages of Brady are clearly met. It should have been turned over. It was not. The third part, which is essential, is the materiality of it. Now, what is it that should have been turned over? The crumbs? No, the fact that this episode had occurred. You mean that he lied? Well, the fact that the episode occurred because he potentially could have been impeached on the witness stand by saying something along the lines of, you could have been charged with possession of a controlled substance in the state and the government has not charged you or that's a possibility. And because of the pending or possible nature of that crime, it should have been turned over under these circumstances. The materiality, though, I believe the court has identified, that it really does not impact to a degree to undercut confidence in the verdict in this particular case. Mr. Rhodes was clearly cross-examined vigorously with a lot of ammunition by the defense in all regards. He was clearly an impeachable witness. He was and he was impeached. And he was impeached about his motives. He was impeached about his background. He was impeached by criminal conduct that he was alleged to have engaged in. They introduced testimony that he himself was engaging in robbing of drug traffickers. He was confronted with that and he denied it. So you were saying it doesn't matter. It's not material. It's not material. Not prejudicial. Reversible. Yes, Your Honor. I'm seeing I'm out of time if there's other issues with respect to the other matters discussed. I'm good. Thank you. Mr. West, do you take the first of the rebuttal? Yes. Thank you, Your Honor. But you just have a little bit. You don't get as much extra that I gave you before. I'm very sorry. You have a little bit. Yes, it will be very, very brief. How many minutes? Your Honor. Two? Three. Three? Well, I'm not going to take the three minutes, Your Honor. I'll see. We'll see. I just want to emphasize I'm certainly not withdrawing on behalf of Baron Walker the claim that he was prejudiced by the withholding of Brady material. I believe that Schuyler Rhodes' testimony on the gun issue, even though it was equivocal in this particular case, could have resulted in the conviction of my client on the gun charge. And the gun charge is very significant. That's what I'm fighting for in this case, 25 years consecutive mandatory minimum. I've been in federal court 40 years now, 25 years consecutive mandatory minimum. That to me means the government has to have good, strong proof. It can't be two wrongs make a right. You have to have enough proof to prove it to a jury. Beyond a reasonable doubt. And zero plus zero is zero, and that's what we have. The first zero is Mr. Rhodes, and the second zero is Jason McLean. And they got on there and they said completely different things. And if you read the testimony, that's where it comes down. Well, given Mr. Consiglio's enlightenment to us with regard to this being joint possession and not aiding and abetting, how does the testimony fall short when the theory is joint possession? Joint possession? There still has to be sufficient evidence that it was jointly possessed, that they both had an intent to use it to further drug trafficking. Help me, because I thought the testimony by one of the gentlemen was five to ten times they were around them and that the M.O. was the guns in the car and they did drops. And he saw a gun. He didn't say how many occasions he saw it, and he was definitely and absolutely unsure as to who it was. And, in fact, he said he didn't think it was my client once. He said he thought it was my client, and I came back on redirect examination and say, are you sure who had that gun? And he said, no. Yeah, but this isn't a situation where somebody's in one apartment and he says, I think I saw it there. Then the other evidence is, I'm not sure if I was in another apartment. As I understand it, they're in a car. I couldn't tell you the type of car, but they're in a car together, and he looks in and he sees it. Take the second innocent, Skyler Rhodes, who testified contrary in the grand jury. What he saw was somebody get out of a car and somebody was in a car, and when the person got out, he saw a gun on the person's hip under his coat. His coat fell back. There's no evidence that the defendant, Barron Walker, saw that same thing. He wasn't outside the car. He was inside the car. Well, Mr. Consiglio is suggesting to us that we take that evidence and take the other evidence with regard to May 31st and infer beyond a reasonable doubt that these were two peas in a pod, these were two drug dealers, and that they were armed drug dealers, and that everybody consented and agreed to everything that was done, which is why I said they should be severed. You can't draw those inferences. It's not guilt by association. It's not if the older brother did it, the younger brother must have did it. Were they charged jointly? Was there a joint possession charge? Well, I think that was the theory because the drugs were in my client's lap, according to the testimony that came in. So the theory was the gentleman with the gun was also in control of the drugs. So, I mean, that theory was presented to the jury. But not conspiracy, not Pinkerton, and not this circuit's case of Goins. And just in closing, this can't be all lumped together. That count that got him 25 years mandatory minimum has to be looked at separately, and the proof has to be adequate, or that count should be undone. And that's my position. Thank you. Thank you. Mr. Duncan, you apparently also seem to have reserved against our usual rule. Thank you, ma'am. I'd first just like to address the Hobbs Act issue, and mainly because I think that that's been we've kind of glanced over it, and I've made this point in my brief, but I want to highlight it. You made the Hobbs Act point throughout your brief. Yes. We understand it. We read it. But in particular, focusing on the case of the United States versus Peterson, which, of course, is a Seventh Circuit case. But in there, really the question before the court is there are two separate standards that the government could try and use to prove this jurisdictional element. One would be a de minimis standard, which my colleague has more than gone into why their evidence wasn't sufficient even for that standard. But the other one under Wang, which is clearly the substantial effect element here, and seemingly what the prosecution has asked for in this case is a bright-line rule that in all drug cases that there's automatically interstate commerce. And that's a rule that has been rejected by several other circuit courts, including the Seventh Circuit, and would essentially relieve the government of its burden of having to prove that element of a Hobbs Act. And we don't believe that that's a proper ruling in this case or a proper rule to set out for future cases. And lastly, just the last point is that clearly there's a distinction between joint possession and aiding and abetting. Even the instruction given on joint possession simply is a far cry from the instruction that we expect to hear on an aiding and abetting claim in here. And, you know, as I make in my brief, even if there's this joint possession, there's really no proof of, you know, there's a gun on my hip that isn't even being flashed. I'm not showing it to you intentionally. But that is sufficient under the Smith case cited in my brief that it would rise to the level of use to substantiate the conviction in that case even on that. And that would be my final point. Thank you. Thank you, ma'am. And we will take this interesting case under advisement.